**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **STEWARD HINTON, individually, and on behalf of all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| | ) | **Case No. 1:23-cv-15395** |
| **v.** | ) ) | |
| **FRITO-LAY, Inc.** | ) ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) ) | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Steward Hinton ("Plaintiff" or "Hinton") individually and on behalf of all others similarly situated (the "Class"), by and through his attorneys, brings the following First Amended Class Action Complaint ("FAC") against Frito-Lay, Inc., ("Frito-Lay" or "Defendant"), its subsidiaries and affiliates, to redress and curtail Defendant's unlawful collection, use, storage, and disclosure of Plaintiff's sensitive and proprietary biometric data. Plaintiff alleges as follows upon personal knowledge as to himself, his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

1.     BIPA addresses the dangers posed by the mishandling of biometric data[1] by providing a right of action to any person who is subjected to a violation of the Act within the State of Illinois. 740 ILCS 14/20.

---

[1]     Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and fingerprints. *See* 740 ILCS § 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an

2.      As relevant here, private entities that collect, obtain, store, or otherwise possess an individual's biometric data violate BIPA when they (i) fail to develop, publicly disclose, and comply with "a retention schedule and guidelines for permanently destroying biometric identifiers and information" (740 ILCS 14/15(a)); (ii) obtain biometric data without first providing adequate written notice and obtaining a written release (740 ILCS 14/15(b), 14/10); (iii) share biometric data without first obtaining the individual's informed consent (740 ILCS 14/15(d)); and (iv) fail to store, transmit, and protect biometric data in a manner that is at least as protective as other confidential and sensitive information required in the healthcare industry (740 ILCS 14/15(e)).

3.      This action seeks to remedy Defendant's illegal practice of disregarding Plaintiff's and all other similarly situated individuals' statutorily protected privacy rights in violation of each of these sections.

4.      Defendant Frito-Lay, Inc. is a Delaware corporation licensed to do business in Illinois, owning and operating several production warehouses throughout the United States, including at least twenty-one locations throughout the state of Illinois.

5.      While many employers use conventional methods for time tracking (such as ID badge or punch clocks), Frito-Lay workers, including those staffed through staffing agencies such as Elite Staffing, are required to have their fingerprints scanned by a biometric timekeeping device. Hereinafter, these individuals shall be referred to as "Frito-Lay workers."

6.      When an individual is hired to work at one or more of Defendant's warehouses, including Plaintiff, they are enrolled in Defendant's biometric timeclocks using their fingerprint. Defendant uses their database(s) and systems to monitor time worked.

---

individual. *Id*. For ease of reference, "**biometric data**" and "**biometrics**" as used herein shall refer to both biometric identifiers and information.

7.      Instead of using conventional methods for tracking time worked (such as ID badges or punch clocks), Frito-Lay workers are required to have their fingerprints scanned by a biometric timekeeping device.

8.      Biometrics are not relegated to esoteric corners of commerce. Many businesses – such as Defendant's – have incorporated biometric applications into their workplace in the form of biometric timeclocks or authenticators, and into consumer products, including such ubiquitous consumer products as checking accounts and cell phones.

9.      Unlike ID badges or timecards – which can be changed or replaced if stolen or compromised – eyes, fingerprints, voiceprints, and face geometry are unique, permanent biometric identifiers associated with each worker. If a system or database containing biometric data is hacked, breached, or otherwise exposed, individuals have **_no_** means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information. This exposes Defendant's workers to serious and irreversible privacy risks.

10.     Take, for example, the recent Kronos data breach. Kronos, one of the world's leading providers of biometric timekeeping solutions, succumbed to a ransomware attack in December 2021. The resulting "administrative chaos" suffered by thousands of Kronos' corporate clients extended well into 2022. *See* Becky Sullivan, *Hackers disrupt payroll for thousands of employers — including hospitals*, (Jan. 15, 2022), https://www.npr.org/2022/01/15/1072846933 /kronos-hack-lawsuits. And for the eight million workers whose personal data was exposed, it may be years before the true extent of their vulnerabilities come to pass. The system breached – Kronos Private Cloud – hosted Kronos's "Workforce Central," where employee biometric data collected for timekeeping purposes is stored.

11.     Recognizing the need to protect its citizens from threats like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS § 14/1, *et seq.*, specifically to regulate companies that collect, store, and use Illinois citizens' biometrics.

12.     Notwithstanding the clear and unequivocal requirements of the law, Defendant disregards Plaintiff's and other similarly-situated individuals' statutorily protected privacy rights and unlawfully collect, store, disseminate, and use Plaintiff's and other similarly-situated individuals' biometric data in violation of BIPA. Specifically, Defendant violated and continues to violate BIPA by:

    a. failing to develop, publish, and adhere to a publicly available retention schedule with guidelines for permanently destroying biometric data, as required by § 15(a);

    b. failing to obtain from Plaintiff and others similarly situated a written release that notifies them, in writing, that their biometric data was being collected, stored, or otherwise obtained, and specifically why and for how long their biometric data would be collected, stored, and used, as required by § 15(b);

    c. failing to obtain Plaintiff's informed consent before disclosing, redisclosing, or otherwise disseminating their biometrics to timekeeping vendors, payroll vendors, and other private entities, as required by of § 15(d); and

    d. failing to store, transmit, and protect from disclosure the biometric data of Plaintiff and others similarly situated in a manner that is at least as protective as other confidential and sensitive information required in the healthcare industry, as required by § 15(e).

13.     Accordingly, Plaintiff, on behalf of himself as well as the putative Class, seeks an Order: (1) declaring that Defendant's conduct violates BIPA; (2) requiring Defendant to cease the unlawful activities discussed herein; and (3) awarding statutory damages to Plaintiff and the proposed Class.

## PARTIES

14.     Plaintiff Steward Hinton is a natural person and a citizen of the State of Illinois.

15.     Defendant Frito-Lay is a Delaware corporation licensed to do business in the State of Illinois. Frito-Lay has at least twenty-one places of business in Illinois, including Cook County.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over Defendant pursuant to the general diversity statute and the Class Action Fairness Act of 2005, 28 U.S.C. § 1446(d), because: (i) Frito-Lay is a Delaware corporation headquartered in Plano, Texas; (ii) Plaintiff is an Illinois citizen; (iii) the proposed Class consists of well over 100 persons; and (iv) the aggregate amount in controversy exceeds $5 million.

17.     Venue is proper in this judicial district because Defendant has places of business located within this judicial district and the events giving rise to Plaintiff's claims occurred in this judicial district .

## FACTUAL BACKGROUND

### I.     The Biometric Information Privacy Act

18.     In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS § 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS § 14/5.

19.     In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly, there was a serious risk that millions of fingerprint records—which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data—could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections

for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather, to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

20.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS § 14/5.

21.     BIPA was enacted due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. It does not, however, prohibit the appropriate use of biometric security and screening measures.

22.     BIPA establishes a comprehensive baseline for biometric data protection by making it unlawful for a company to, among other things, collect, capture, store, share, or otherwise obtain, possess or disclose an individual's biometric data without:

a.     developing, publishing, and adhering to a publicly available retention schedule with guidelines for permanently destroying biometric data;

b.     obtaining a written release from each individual that notifies them, in writing, that their biometric data was being collected, stored, or otherwise obtained, and specifically why and for how long their biometric data would be collected, stored, and used;

c.     obtaining an individuals informed consent before disclosing, redisclosing, or otherwise disseminating their biometrics to other private entities; and

d.     protecting an individual's biometric data "using the reasonable standard of care within the private entity's industry" or "in a manner that is the same or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information."

*See* 740 ILCS § 14/15(a), (b), (d), and (e).

23.     BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information. 740 ILCS § 14/15(c).

24.     To ensure compliance, BIPA provides that, for each violation, individuals may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS § 14/20.

25.     Biometric identifiers include retina and iris scans, voiceprints, face geometry, hand geometry, and fingerprints. *See* 740 ILCS § 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id*.

26.     BIPA protects individuals' right to privacy over their biometrics the right to know the precise nature for which their biometrics are used, stored, protected, and ultimately destroyed. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics, and creates a private right of action for lack of statutory compliance.

27.     Plaintiff, like the Illinois legislature, recognizes how imperative it is to keep biometric identifiers and biometric information secure. Biometric data, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

**II.      Defendant Violates the Biometric Information Privacy Act.**

28.      By the time BIPA passed through the Illinois legislature in mid-2008, most companies who had experimented using individuals' biometric data stopped doing so.

29.     However, Defendant failed to take note of the shift in Illinois law governing the collection, use and dissemination of biometric data. As a result, Defendant continues to collect, store, use and disseminate individuals' biometric data in violation of BIPA.

30.     Specifically, when Frito-Lay workers begin working for Defendant, they are required to have their fingerprints scanned to enroll them in timekeeping system and database(s).

31.     Defendant uses and has used software supplied by a third party that requires workers to use their fingerprint as a means of authentication. Per the company's policy, all hourly workers at Frito-Lay are required to use their fingerprints to clock-in and clock-out for attendance.

32.     Upon information and belief, Defendant failed and continues to fail to inform Frito-Lay workers that it discloses or disclosed their fingerprint data to at least one out-of-state third-party vendor, and likely others; fails to inform Frito-Lay workers that it discloses their fingerprint data to other, currently unknown, third parties; fails to inform Frito-Lay workers of the purposes and duration for which it collects their sensitive biometric data; and fails to obtain written releases from Frito-Lay workers before collecting their fingerprints.

33.     Furthermore, Defendant fails to provide Frito-Lay workers with a written, publicly available policy identifying its retention schedule and guidelines for permanently destroying their fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by BIPA.

34.     The Pay by Touch bankruptcy that catalyzed the passage of BIPA, as well as the recent data breaches, highlight why such conduct – where individuals are aware that they are providing their biometrics, but not aware of to whom or for what purposes they are doing so – is dangerous. That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers, who exactly is collecting their biometric data, where it will be transmitted, for what purposes, and for how long. Defendant disregards these obligations and its workers' statutory rights and instead unlawfully collects, stores,

uses and disseminates its workers' biometric identifiers and information, without first receiving the individual's informed written consent required by BIPA.

35.     Defendant did not advise Plaintiff or others similarly situated what might happen to their biometric data if and when Defendant merges with another company, or worse, if and when Defendant folds.

36.     Because Defendant failed to publish a BIPA-mandated data retention policy or disclosed their collection and use of biometric data, Frito-Lay workers have no idea at the time of collection whether Defendant sells, discloses, rediscloses, or otherwise disseminates their biometric data. Moreover, Plaintiff and others similarly situated are not told at the time of collection to whom Defendant discloses their biometric data, or what might happen to their biometric data in the event of a merger, dissolution, or a bankruptcy.

37.     These violations raise a material risk that Plaintiff's and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

38.     By and through the actions detailed above, Defendant disregarded Plaintiff's and other similarly-situated individuals' legal rights in violation of BIPA.

**III.     Plaintiff Steward Hinton's Experience**

39.     Plaintiff Steward Hinton worked at Frito-Lay in the package and assembly department as a temporary agent on an as-needed basis from Summer 2017 through Summer 2019 at the facilities located in Geneva and Aurora Illinois.

40.     He was assigned to work at Frito-Lay by Elite Staffing, a staffing agency.

41.     As a condition of working at Frito-Lay, Plaintiff ***was required*** to scan his fingerprint so Defendant could use it as an authorization method to track his time. Plaintiff began scanning his fingerprint once he was hired by Frito-Lay in June 2017.

42. Both the Aurora and Geneva locations had fingerprint enabled timeclocks, with the clock at the Geneva location located outside the lunchroom.

43. Plaintiff was enrolled into the biometric timeclock on his first day at Frito-Lay by a Frito-Lay employee, who directed him to scan his fingerprint into the timekeeping system. After this initial enrollment of his fingerprint, the biometric devices at both Frito-Lay's Geneva and Aurora facilities recognized his fingerprint when he clocked in.

44. Defendant subsequently stored Plaintiff's fingerprint data in its timekeeping system and related database(s).

45. Plaintiff was required to scan his fingerprint each time he clocked in for work and clocked out of work.

46. Plaintiff has never been informed of the specific limited purposes or length of time for which Defendant collected, stored, used and/or disseminated his biometric data.

47. Plaintiff has never been informed of any biometric data retention policy developed by Defendant, nor has he ever been informed of whether Frito-Lay will ever permanently delete his biometric data.

48. Plaintiff has never been provided with nor ever signed a written release allowing Frito-Lay to collect, store, use or disseminate his biometric data.

49. Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's multiple violations of BIPA alleged herein.

50. No amount of time or money can compensate Plaintiff if his biometric data is compromised by the lax procedures through which Defendant captured, stored, used, and disseminated his and other similarly-situated individuals' biometrics. Moreover, Plaintiff would not

have provided his biometric data to Defendant if he had known that they would retain such information for an indefinite period of time without his consent.

51. A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act").

52. As Plaintiff is not required to allege or prove actual damages in order to state a claim under BIPA, he seeks statutory damages under BIPA as compensation for the injuries caused by Defendants. *Rosenbach*, 2019 IL 123186, ¶ 40.

## CLASS ALLEGATIONS

53. Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), Plaintiff brings claims on his own behalf and as representatives of all other similarly-situated individuals pursuant to BIPA, 740 ILCS § 14/1, *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

54. As discussed *supra*, Section 14/15(b) of BIPA prohibits a company from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it first (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS § 14/15.

55.     Plaintiff seeks class certification under Rule 23 for the following class of similarly-situated individuals under BIPA:

> All individuals working for Frito-Lay in the State of Illinois who had their biometric identifiers and/or biometric information collected, captured, received, obtained, maintained, stored or disclosed by Defendant during the applicable statutory period.

56.     This action is properly maintained as a class action under Rule 23(a) and Rule 23(b) because:

A.     The class is so numerous that joinder of all members is impracticable;

B.     There are questions of law or fact that are common to the class;

C.     The claims of the Plaintiff are typical of the claims of the class; and,

D.     The Plaintiff will fairly and adequately protect the interests of the class.

## Numerosity

57.     The total number of putative class members exceeds fifty (50) individuals.  The exact number of class members can easily be determined from Frito-Lay's payroll records.

## Commonality

58.     There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Plaintiff and all members of the Class have been harmed by Defendant's failure to comply with BIPA. The common questions of law and fact include, but are not limited to the following:

A.     Whether Defendant collected, captured or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

B.     Whether Defendant properly informed Plaintiff and the Class of their purposes for collecting, using, storing and disseminating their biometric identifiers or biometric information;

C.     Whether Defendant obtained a written release (as defined in 740 ILCS § 14/10) to collect, use, store and disseminate Plaintiff's and the Class's biometric identifiers or biometric information;

D.     Whether Defendant has disclosed or re-disclosed Plaintiff's and the Class's biometric identifiers or biometric information;

E.     Whether Defendant has sold, leased, traded, or otherwise profited from Plaintiff's and the Class's biometric identifiers or biometric information;

F.     Whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction with the individual, whichever occurs first;

G.     Whether Defendant complies with any such written policy (if one exists);

H.     Whether Defendant used Plaintiff's and the Class's fingerprints to identify them;

I.     Whether Defendant's violations of BIPA have raised a material risk that Plaintiff's biometric data will be unlawfully accessed by third parties;

J.     Whether the violations of BIPA were committed negligently; and

K.     Whether the violations of BIPA were committed intentionally and/or recklessly.

59.     Plaintiff anticipates that Defendant will raise defenses that are common to the class.

### Adequacy

60.     Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiff and class members. Plaintiff, moreover, has retained experienced counsel that are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

### Typicality

61.     The claims asserted by Plaintiff are typical of the class members he seeks to represent. Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

62.     Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the

relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer and/or work assignment. However, if any such class member should become known, he or she can "opt out" of this action pursuant to Rule 23.

**Predominance and Superiority**

63.     The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

64.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

**FIRST CAUSE OF ACTION**
**Violation of 740 ILCS § 14/15(a): Failure to Institute, Maintain and Adhere to**
**Publicly-Available Retention Schedule**

65.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

66.     BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS § 14/15(a).

67.     Defendant fails to comply with these BIPA mandates.

68.     Defendant Frito-Lay is a Delaware corporation registered to do business in Illinois with at least twenty-one Illinois locations and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

69.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Frito-Lay (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

70.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

71.     Defendant failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS § 14/15(a).

72.     Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and has not and will not destroy Plaintiff's and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

73.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each willful and/or reckless violation of BIPA  pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**SECOND CAUSE OF ACTION**
**Violation of 740 ILCS § 14/15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information**

74.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

75.     BIPA requires companies to obtain informed written consent from individuals before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; ***and*** (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b) (emphasis added).

76.     Defendant fails to comply with these BIPA mandates.

77.     Defendant Frito-Lay is a Delaware corporation registered to do business in Illinois with at least twenty-one Illinois locations and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

78.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Frito-Lay (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

79.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

80.     Defendant systematically and automatically collected, used, and stored Plaintiff's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

81.     Defendant did not inform Plaintiff in writing that his biometric identifiers and/or biometric information were being collected, stored and used, nor did Defendant inform Plaintiff in writing of the specific purpose and length of term for which his biometric identifiers and/or biometric information were being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2).

82.     By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

83.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000

for each willful and/or reckless violation of BIPA  pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

### THIRD CAUSE OF ACTION
**Violation of 740 ILCS § 14/15(d): Disclosure of Biometric Identifiers and Information Before Obtaining Consent**

84.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

85.     BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

86.     Defendant fails to comply with this BIPA mandate.

87.     Defendant Frito-Lay is a Delaware corporation registered to do business in Illinois with at least twenty-one Illinois locations and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

88.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Frito-Lay (in the form of their fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

89.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

90. Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiff's biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS 14/15(d)(1).

91. By disclosing, redisclosing, or otherwise disseminating Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

92. On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for <u>each</u> reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for <u>each</u> negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

## PRAYER FOR RELIEF

Wherefore, Plaintiff Steward Hinton respectfully requests that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Steward Hinton as Class Representative, and appointing Stephan Zouras, LLP, as Class Counsel;

B. Declaring that Defendant's actions, as set forth above, violate BIPA;

C. Awarding statutory damages of $5,000 for *each* reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS § 14/20(1);

D. Declaring that Defendant's actions, as set forth above, were intentional or reckless;

E.      Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendant to collect, store, use and disseminate biometric identifiers and/or biometric information in compliance with BIPA;

F.      Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3);

G.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and,

H.      Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Date:   November 1, 2023                    Respectfully Submitted,

                                            */s/ Anna M. Ceragioli*
                                            Ryan F. Stephan
                                            James B. Zouras
                                            Anna M. Ceragioli
                                            **STEPHAN ZOURAS, LLP**
                                            222 W. Adams St.
                                            Suite 2020
                                            Chicago, Illinois 60606
                                            312.233.1550
                                            312.233.1560 *f*
                                            rstephan@stephanzouras.com
                                            jzouras@stephanzouras.com
                                            aceragioli@stephanzouras.com
                                            Firm ID: 43734

                                            **ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I, the attorney, hereby certify that on November 1, 2023, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

<u>*/s/ Anna M. Ceragioil*</u>